1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

LAW OFFICE OF SHARON J. BRUNNER
SHARON J. BRUNNER, ESQ. (SBN: 229931)
14393 Park Avenue, Suite 101
Victorville, CA 92392
(760) 243-9997- Telephone
(760) 843-8155- Facsimile
Email:  sharonjbrunner@yahoo.com

LAW OFFICES OF DALE K. GALIPO
DALE K. GALIPO, ESQ. (SBN: 144074)
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
(818) 347-3333 – Telephone
(818) 347- 4118 – Facsimile
Email: dalekgalipo@yahoo.com

LAW OFFICE OF JAMES S. TERRELL
James S. Terrell, Esq. (SBN 170409)
15411 Anacapa Road
Victorville, CA 92392
(760) 951-5850 - Telephone:
(760) 952-1085 - Facsimile
Email: jim@talktoterrell.com

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

TAMMY SHIDLER and GARY
SHIDLER, individually and as successors
in interest to Joshua Pitts, deceased.

PLAINTIFFS,

vs.

COUNTY OF SAN BERNARDINO;
RYAN ARTHURTON; WAYNE
GREER; BILL SAVAGE; RONALD
DUNBAR; BROOKE FLORES;
MICHELLE HAYES; CRAIG HELLER;
JACOB TIEL; STEVE WILSON; and
DOE 10.

Defendants.

Case Number: 5:19-cv-00503-AB
(SHKx)

**THIRD AMENDED COMPLAINT
FOR DAMAGES**

1. Fourteenth Amendment – Denial
   of Medical Care (42 U.S.C.
   §1983)

2. Fourteenth Amendment –
   Substantive Due Process (42
   U.S.C. §1983)

3. Negligence – Professional
   Medical Malpractice (Wrongful
   Death)

4. Failure to Summon Medical
   Care (Cal. Gov't Code §845.6)

1

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

5.  Bane Act (Cal. Code §52.1)

## THIRD AMENDED COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs, Tammy Shidler and Gary Shidler, individually and as successors in interest to Joshua Pitts, deceased, for their Second Amended Complaint against Defendants, County of San Bernardino (including its San Bernardino Sheriff's Department, its Morongo Basin Sheriff's Station Jail, and its West Valley Detention Center), RYAN ARTHURTON, WAYNE GREER, BILL SAVAGE, RONALD DUNBAR, BROOKE FLORES, MICHELLE HAYES, CRAIG HELLER, JACOB TIEL, STEVE WILSON, and DOE 10, and hereby allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court because the parties reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of San Bernardino, California.

3.     The survival claims in this action are joined with the individual wrongful death claims pursuant to CCP § 377.62, as all claims arise out of the same wrongful acts or neglect.

4.     Plaintiffs filed a timely claim under Government Code Section 911.2 et al., and bring pendant actions under state law. The claim was rejected on September 21, 2018.

## INTRODUCTION

5.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants, including the County of San Bernardino its Morongo Basin Sheriff's Station Jail, its West Valley Detention Center, and the County's involved deputies, for violating various rights under the United States Constitution and California law in connection with the in-custody death of Plaintiffs' son, the deceased, Joshua Pitts, on or around March 27, 2018.

## PARTIES

6.     At all relevant times, Joshua Pitts ("DECEDENT") was an individual residing in the County of San Bernardino.

7.      Tammy Shidler ("TAMMY") and Gary Shidler ("GARY") are individuals residing in the County of San Bernardino, California, and were at all relevant times the natural mother and father of DECEDENT.  TAMMY and GARY sue in their individual capacities as the mother and father of DECEDENT.  TAMMY and GARY seek both survival and wrongful death damages under federal and state law.

8.     At all relevant times, Defendant, COUNTY OF SAN BERNARDINO ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of political subdivision for the State of California with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, and employees, including the San Bernardino County Sheriff's Department ("SBCSD") and its agents and employees, the West Valley Detention Center ("WVDC") and the Morongo Basin Sheriff's Station Jail ("MBJ") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, COUNTY was employer of all named Defendants.

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

9.      Defendant RYAN ARTHURTON ("ARTHURTON") is a sheriff's deputy working for the SBCSD. ARTHURTON was acting under color of law within the course and scope of his duties as a deputy for the SBCSD.  At all relevant times, ARTHURTON was acting with the complete authority and ratification of his principal, Defendant COUNTY. ARTHURTON is now correctly named and referred to in Plaintiffs' previous complaint as Doe #1.

10.     Defendant WAYNE GREER ("GREER") is a sheriff's deputy working for the SBCSD. GREER was acting under color of law within the course and scope of his duties as a deputy for the SBCSD. GREER was acting with the complete authority and ratification of his principal, Defendant COUNTY. GREER is now correctly named and referred to in Plaintiffs' previous complaint as Doe #2.

11.     Defendant BILL SAVAGE ("SAVAGE") is a correctional deputy for the Morongo Basin Jail ("MBJ") responsible for identifying medical and mental health issues and providing medical attention, medical screening, and medical care to inmates, as well as a deputy being responsible for monitoring inmates. At all relevant times, SAVAGE was acting under color of law within the course and scope of his duty as a sheriff's deputy or correctional officer for the MBJ. At all relevant times, SAVAGE was acting with the complete authority and ratification of his principal, Defendant COUNTY. SAVAGE is now correctly named and referred to in Plaintiffs' previous complaint as Doe #3.

12.     Defendant RONALD DUNBAR ("DUNBAR") is a sheriff's deputy or correctional officer for the Morongo Basin Jail ("MBJ") responsible for monitoring inmates, ensuring inmates do not harm themselves, and determining where a particular inmate shall be housed, including whether an inmate is placed in a monitored cell or in suicide watch. At all relevant times, DUNBAR was acting under color of law within the course and scope of his duties as a sheriff's deputy or correctional officer for the MBJ. At all relevant times, DUNBAR was acting with the complete authority and

ratification of his principal, Defendant COUNTY. DUNBAR is now correctly named and referred to in Plaintiffs' previous complaint as Doe #4.

13.     Defendant BROOKE FLORES (FLORES") is employed at WVDC as a medical professional. FLORES is responsible for identifying medical and mental health issues and providing aid to mentally ill inmates or inmates suffering from suicidal ideation. FLORES is responsible for ensuring inmates do not harm themselves and assigning monitoring/suicide watch and notifying staff and correctional officers of inmates with suicidal ideation. FLORES was at all times working under the direction of the COUNTY. FLORES is now correctly named and referred to in Plaintiff's previous complaint as Doe #5.

14.     Defendant MICHELLE HAYES, CT II (HAYES"), a clinical therapist II was at all times employed as a medical professional at WVDC. HAYES is responsible for identifying mental health issues and providing aid, protection, and recognizing suicidal ideation. HAYES is responsible for ensuring inmates do not harm themselves and assigning monitoring/suicide watch and notifying staff and correctional officers of inmates with suicidal ideation. HAYES is now correctly named and referred to in Plaintiffs' previous complaint as Doe #6.

15.     Defendant CRAIG HELLER ("HELLER") is a sheriff's custody specialist or correctional officer for the MBJ. At all relevant times, HELLER was acting under color of law within the course and scope of his duty as sheriff's custody specialist for the MBJ. At all relevant times, HELLER was acting with the complete authority and ratification of his principal, Defendant COUNTY. HELLER is now correctly named and referred to in Plaintiffs' previous complaint as Doe #7.

16.     Defendant JACOB TIEL ("TIEL") is a sheriff's deputy or correctional officer for the MBJ. At all relevant times, TIEL was acting under color of law within the course and scope of his duty as a sheriff's deputy or correctional officer for the MBJ. At all relevant times, TIEL was acting with the complete authority and ratification of

his principal, Defendant COUNTY. TIEL is now correctly named and referred to in Plaintiffs' previous complaint as Doe #8.

17.    Defendant STEVE WILSON ("WILSON") is a managerial, supervisorial, and policymaking employee of the MBJ who was acting under color of law within the course and scope of his employment with the MBJ.  At all relevant times, WILSON was acting with the complete authority and ratification of his principal, Defendant COUNTY. At all relevant times, WILSON had managerial and supervisory authority over defendants ARTHURTON, GREER, SAVAGE, DUNBAR, HELLER, and TIEL who were working at MBJ. STEVE WILSON is now correctly named and referred to in Plaintiff's previous complaint as Doe #9.

18.    Defendant DOE 10 ("WVDC SUPERVISOR DOE") is a managerial, supervisorial, and policymaking employee of the WVDC. At the time of the incident, WVDC SUPERVISOR DOE was acting under color of law, within the course and scope of his/her duties for the WVDC, and within the scope of his/her employment with the COUNTY.  At all relevant times, WVDC SUPERVISOR DOE was acting with the complete authority and ratification of his/her principal, Defendant, COUNTY. WVDC SUPERVISOR DOE is charged with developing and implementing the policies regarding medical care and medical screening, providing training on medical care and medical screening, and supervising nurses and medical professionals at WVDC.  DOE #10 had managerial and supervisory authority over FLORES and HAYES who were working at WVDC. At all relevant times, WVDC SUPERVISOR DOE had managerial and supervisory authority over WVDDC personnel and SBCSD DEPUTIES who were working at WVDC.

19.    On information and belief, all named Defendants and DOE 10 were residents of the County of San Bernardino, California.

20.    In doing the acts and failing and omitting to act as hereinafter described, Defendants, were acting on the implied and actual permission and consent of Defendant, COUNTY.

21.    The true name and capacity of DOE 10 is unknown to Plaintiffs, who otherwise sue this Defendant by such fictitious name.

22.    All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

23.    On or about August 30, 2018, Plaintiffs filed a comprehensive and timely claim for damages with the County of San Bernardino pursuant to applicable sections of the California Government Code. The claim was rejected on September 21, 2018.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

24.    Plaintiffs repeat and re-allege each and every allegation in paragraph 1 through 23 of this Complaint with the same force and effect as if fully set forth herein.

25.    On or around March 20, 2018, ARTHURTON and GREER arrested and detained DECEDENT, who suffered from Attention-Deficit/Hyperactivity Disorder[1] ("ADHD"), bipolar disorder[2] and paranoia.  Local law enforcement had familiarity with DECEDENT and DECEDENT'S mental health struggles.

26.    When SBCSD Deputies ARTHURTON and GREER arrested DECEDENT, DECEDENT told ARTHURTON and GREER that he wanted to kill himself. Defendants thus had actual knowledge of DECEDENT'S obvious medical and mental

---

[1] Attention-Deficit/Hyperactivity Disorder ("ADHD") - ADHD is a chronic condition marked by persistent inattention, hyperactivity, and sometimes impulsivity. ADHD begins in childhood and often lasts into adulthood. As many as 2 out of every 3 children with ADHD continue to have symptoms as adults.

[2] Bipolar Disorder - A mental condition marked by alternating periods of elation and depression.

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  health issues even prior to DECEDENT being booked at MBJ.

2  27.    After SBCSD Deputies ARTHURTON and GREER arrested DECEDENT on

3  March 20, 2018, they transported DECEDENT to MBJ, where he was booked and

4  screened.

5  28.    DECEDENT'S family members informed Defendants of DECEDENT'S

6  suicidal ideation and the need to continuously monitor DECEDENT in order to

7  prevent DECEDENT from harming himself.

8  29.    Defendant SAVAGE and DUNBAR, both unqualified to medically and

9  psychologically screen DECEDENT, answered the questions on the intake form.

10  DECEDENT was not allowed or permitted to describe his past mental history or his

11  need for psychotropic medicine.

12  30.    Level 1 jails have no medical personnel on-site and are not equipped to house

13  inmates who require medical or mental health assistance.

14  31.    On information and belief, DECEDENT was not properly and adequately

15  screened by a Registered Nurse upon his initial arrival to and booking at MBJ to

16  determine his fitness for incarceration—not in person, and not through

17  "telemedicine."

18  32.    After being processed into the Level 1 facility, Defendant HELLER, Sheriff's

19  custody specialist, reported DECEDENT was suffering from suicidal ideation and

20  made arrangements to transfer DECEDENT to WVDC where medical and mental

21  professionals were available to the pretrial detainee.

22  33.    On March 21, 2018, DECEDENT was transported from MBJ to WVDC, where

23  he was placed on suicide watch. On March 22, 2018, DECEDENT was removed from

24  suicide watch by Defendant HAYES, after only one day. DECEDENT was not

25  properly screened or treated for his medical/mental health condition, including not

26  receiving appropriate medical/mental health treatment from employees, including

27  FLORES.

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

34.    On March 26, 2018, DECEDENT was transported back to MBJ. At MBJ, DECEDENT was not properly monitored by Defendants DUNBAR, SAVAGE, TIEL, and Supervisor WILSON. In part, this lack of monitoring occurred because the medical staff including HAYES and FLORES, placed DECEDENT back in general population while at WVDC and never communicated DECEDENT'S needs to be monitored to MBJ Defendants.

35.    On information and belief, DECEDENT was not properly and adequately screened by a psychologist or psychiatrist while incarcerated at WVDC to ensure that his medical/mental health issue had been properly evaluated and/or treated—not in person, and not through "telemedicine."  FLORES and HAYES failed to provide the follow-up or monitoring plan for DECEDENT'S safety and well-being, and DECEDENT was not monitored or properly evaluated.

36.    Throughout DECEDENT'S incarceration period of seven (7) days, DECEDENT verbalized his need for medication to assist him with his mental illness to arresting officers, personnel at MBJ and WVDC.

37.    Also, throughout DECEDENT'S incarceration period of seven (7) days, DECEDENT exhibited visible, severe signs of depression and engaged in odd behavior. On information and belief, SAVAGE, DUNBAR, HELLER, and TIEL and other employees of MBJ and WVDC witnessed DECEDENT's visible, severe signs of depression and odd behaviors.

38.    By March 26, 2018, the day before DECEDENT'S death, DECEDENT'S mental health and depression had worsened. On that date, DECEDENT was acting delusional and expressed his desire to hurt himself to Defendants DUNBAR, SAVAGE, TIEL, and HELLER had reported to WILSON and other MBJ employees that DECEDENT exhibited the following symptoms: crying, shaking of his head back and forth, and hearing voices.  WILSON, other MBJ employees, and multiple inmates witnessed DECEDENT'S concerning behavior. Despite all of the obvious signs and

behaviors of DECEDENT, DECEDENT was not placed on suicide watch, nor was DECEDENT continuously monitored by named Defendants or other MBJ employees, nor was DECEDENT placed in a monitored cell, nor were DECEDENT'S bed sheets or other items with which he could harm himself removed from his cell. DECEDENT was ignored.

39.     On March 27, 2018, the day of DECEDENT'S death, DECEDENT had a jailhouse visit with a family member.  After the visit, the family member expressed concern to MBJ DEPUTIES, and other MBJ employees about the overall well-being of DECEDENT, DECEDENT'S suicidal ideations, and his disturbing behavior. DECEDENT'S family member informed MBJ DEPUTIES, SBCSD DEPUTIES, and other MBJ employees that DECEDENT was suffering from delusional behavior, was acting erratic, and required continuous monitoring. MBJ employees did not provide the appropriate medical attention to DECEDENT and did not place him on suicide watch, despite this knowledge.  Later in the day on March 27, 2018, DECEDENT died from an apparent suicide at MBJ.

40.     DECEDENT was found hanging in his cell, with his bedsheet knotted around his neck, at approximately 22:23 hours on March 27, 2018. However, medics did not reach DECEDENT until approximately 22:39 hours on that date.

41.     As alleged above, MBJ DEPUTIES and SBCSD DEPUTIES failed to provide appropriate medical attention to DECEDENT before DECEDENT hung himself. Plaintiffs further allege that named DEPUTIES also failed to provide sufficient and immediate medical attention to DECEDENT after he hung himself. On information and belief, an Automated External Defibrillator ("AED") was not used as a life-saving measure on DECEDENT until after the paramedics arrived, and use of an AED or other life-saving equipment immediately after DECEDENT was found hanging in his cell (as opposed to merely chest compressions) could have prevented his death.

42.     Defendants were negligent in their conduct, including but not limited to negligence in MBJ procedures for intake and housing of those in need of mental and medical care. WVDC Defendants FLORES and HAYES were negligently trained with respect to providing mental and medical care to inmates suffering from mental illness and they were negligent in prematurely releasing DECEDENT from suicide watch when he remained a danger to himself; DECEDENT at MBJ; negligent tasing of DECEDENT.

43.     Each of the named Defendants were integral participants in the denial of medical care, the use of excessive force against DECEDENT, the negligent treatment of DECEDENT, and other violations of DECEDENT'S rights, or, alternatively, failed to intervene to prevent these violations.

## FIRST CLAIM FOR RELIEF

### Fourteenth Amendment – Denial of Medical Care (42 U.S.C. §1983)

### (Against Defendants ARTHURTON, GREER, DUNBAR, SAVAGE, TIEL, FLORES, HAYES, HELLER, and WILSON)

44.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     The Fourteenth Amendment's Due Process Clause of the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where prison officials are deliberately indifferent to inmates' medical needs. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right. The failure to provide such care would constitute a form of punishment imposed on persons not convicted of a crime, which is impermissible. *Bell v. Wolfish*, 441 U.S. 520 (1979).

46.     At all relevant times, named Defendants medical professionals FLORES and HAYES' conduct was at all times at the direction of COUNTY and their

1   unconstitutional policies under color of law.

2   47.     As alleged above, Defendants had actual knowledge of DECEDENT'S suicidal

3   ideations, and his ADD/disturbed behavior, as follows: Local law enforcement had

4   familiarity with DECEDENT and DECEDENT'S mental health struggles, including

5   that DECEDENT suffered from bipolar disorder and paranoia. When SBCSD

6   Deputies ARTHURTON and GREER arrested DECEDENT on or around March 20,

7   2018, DECEDENT told SBCSD Deputies ARTHURTON and GREER that he

8   wanted to kill himself.

9   48.     Throughout DECEDENT'S incarceration period of seven (7) days,

10  DECEDENT verbalized his need for medication to assist him with his mental illness

11  to MBJ employees and WVDC medical staff.

12  49.     On March 26, 2018, DECEDENT was acting delusional, crying, shaking, and

13  expressed his desire to hurt himself. DECEDENT was in custody at both MBJ and

14  WVDC on that date. On March 27, 2018, DECEDENT'S family member visited and

15  observed DECEDENT'S behaviors and then informed MBJ employees on March 27,

16  2018 that DECEDENT was suffering from delusional behavior, was acting erratic,

17  had suicidal ideations, and required continuous monitoring.

18  50.     Despite Defendants Deputies having actual knowledge of DECEDENT's

19  suicidal ideations even prior to DECEDENT's booking at MBJ, on information and

20  belief, DECEDENT was not properly and adequately screened by a Registered Nurse

21  during intake or through telemedicine. Moreover, DECEDENT was improperly

22  housed at MBJ, including in that he was not placed in a continuously monitored cell

23  and including that items such as DECEDENT'S bedsheets, with which he could harm

24  himself, were not removed from DECEDENT'S cell. ARTHURTON, GREER,

25  SAVAGE, DUNBAR, HELLER and MBJ SUPERVISOR WILSON were objectively

26  indifferent to DECEDENT's serious medical and mental health needs when they

27  failed to ensure that prompt and adequate medical attention was provided to

DECEDENT upon booking at MBJ, including failure to place DECEDENT in a monitored cell and, on information and belief, failure to ensure that DECEDENT was properly screened by a Registered Nurse during intake to determine his fitness for incarceration. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial.

51.     Defendants SBCSD DEPUTIES, ARTHURTON and GREER were indifferent to DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical/mental health attention and continuous monitoring was provided to DECEDENT upon booking at MBJ. This is particularly true given that DECEDENT told the Defendant Deputies during his arrest that he wanted to kill himself, and local law enforcement was familiar with DECEDENT'S mental health struggles. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial.

52.     HAYES released DECEDENT back into general population having actual knowledge of DECEDENT'S suicidal ideations. DECEDENT was denied prompt and adequate medical attention when they improperly and prematurely released DECEDENT from suicide watch even though he remained suicidal. DECEDENT was placed on suicide watch on March 21, 2018 and was prematurely and improperly released after only one day, on March 22, 2018, despite DECEDENT continuing to exhibit signs of suicidal behaviors. This demonstrates deliberate indifference. Defendants FLORES and HAYES were deliberately indifferent to DECEDENT'S serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to DECEDENT. FLORES and HAYES failed to seek out an evaluation with a psychiatrist for DECEDENT and failed to monitor DECEDENT.  Based upon information and belief, FLORES and HAYES

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

failed to notify Deputies during his detention at WVDC between March 22, 2018 and March 26, 2018 of DECEDENT'S suicidal ideations.  On March 26, 2018, DECEDENT was acting delusional, crying, shaking, and expressed his desire to hurt himself. Nonetheless, HAYES and FLORES returned DECEDENT back to general population rather than keeping him back on suicide watch or providing him with medical attention to address his severe mental health emergency. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial.

53.     When DECEDENT returned to MBJ on March 26, 2018, DECEDENT was acting delusional, was crying and shaking, and expressed his desire to hurt himself. Despite Defendants DUNBAR, TIEL, SAVAGE, HELLER and MBJ Supervisor WILSON having actual knowledge of DECEDENT's suicidal ideations from the time of his arrest on March 20, 2018 up until the time of DECEDENT's death, all named Defendants and other WVDC employees failed to ensure that prompt and adequate medical attention and monitoring was provided to DECEDENT. All named Defendants were thus deliberately indifferent to DECEDENT's serious medical and mental health emergency. Despite their observations of DECEDENT's behavior and desire to hurt himself on March 26, 2018, MBJ Defendants including HELLER who knew of DECEDENT'S illness failed to place DECEDENT on suicide watch at MBJ or transport him back to WVDC to be placed on suicide watch when he returned from WVDC. MBJ Employees HELLER, DUNBAR, SAVAGE, and TIEL failed to continuously monitor DECEDENT at MBJ or place him in a monitored cell, and failed to otherwise properly and promptly address his suicidal ideations.  On information and belief, on March 27, 2018, WILSON received direct information from DECEDENT's family member that DECEDENT was suicidal and may harm himself. Despite this direct knowledge, named Defendants and MBJ SUPERVISOR

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

WILSON still did not provide DECEDENT with adequate and prompt medical attention to address his serious medical needs.  Defendants took no actions to remove items from DECEDENT'S cell that he could use to harm himself, including his bedsheet that he ultimately used to hang himself. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial.

54.    Defendants thus made intentional decisions regarding DECEDENT'S confinement as alleged above. These conditions put DECEDENT at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to abate this risk despite obvious consequences of not treating DECEDENT'S suicidal ideations, and by not treating DECEDENT's suicidal ideations, Defendants caused DECEDENT'S injury and death.

55.    DECEDENT'S medical need was serious, in that the failure to treat DECEDENT's suicidal ideations, desire to harm himself, and other erratic behaviors resulted in DECEDENT'S death. DECEDENT's suicidal ideations, desire to harm himself, and other erratic behaviors significantly affected DECEDENT's daily activities.

56.    DECEDENT was entitled to receive necessary medical attention while in the care and custody of the COUNTY, including when he was in the custody of SBCSD DEPUTIES and employees FLORES and HAYES, while incarcerated at MBJ and WVDC.  In doing the acts complained of, Defendants deprived DECEDENT of urgently needed medical care in violation of his rights under the Due Process Clause of the Fourteenth Amendment.

57.    Defendants knew that failure to provide timely medical treatment to DECEDENT could result in DECEDENT harming or killing himself, but disregarded that serious medical emergency, directly causing DECEDENT great bodily harm and

1  death.

2  58.   DECEDENT was found hanging in his cell, with his bedsheet knotted around

3  his neck, at approximately 22:23 hours on March 27, 2019.  However, paramedics did

4  not reach DECEDENT until approximately 22:39 hours on that date. As alleged

5  above, MBJ staff HELLER, SAVAGE, DUNBAR, and TIEL failed to provide

6  appropriate medical attention to DECEDENT before DECEDENT hung himself.

7  Plaintiffs further allege that named Defendant Deputies also failed to provide

8  sufficient and immediate medical attention to DECEDENT after he hung himself. On

9  information and belief, an Automated External Defibrillator ("AED") was not used as

10 a life-saving measure on DECEDENT until after the paramedics arrived, and use of

11 an Automated External Defibrillator ("AED") or other life-saving equipment

12 immediately after DECEDENT was found hanging in his cell (as opposed to merely

13 chest compressions) could have prevented his death. This evidences Defendants'

14 deliberate indifference toward DECEDENT'S serious medical needs.

15 59.   Each of the several aforementioned actions and omissions of Defendants along

16 with other undiscovered conduct, shocks the conscience, in that they acted with

17 deliberate indifference to the constitutional rights of DECEDENT and with purpose

18 to harm unrelated to any legitimate law enforcement objective. Defendants were

19 deliberately indifferent to a substantial risk of serious harm or serious medical needs

20 of DECEDENT. Defendants' conduct served no legitimate penological purpose.

21 60.   Defendants are liable for the denial of medical care to DECEDENT, and for his

22 injuries and death, either because they were integral participants in the denial of

23 medical care, or because they failed to intervene to prevent these violations.

24 61.   As a direct and proximate result of the aforementioned conduct, DECEDENT

25 suffered injuries, including pain and suffering, and then died and lost his earning

26 capacity.

27 62.   Also as a direct and proximate cause of the acts of Defendants, Plaintiffs

16

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

63.     The conduct of Defendants was willful, wanton, malicious, and done with an evil motive and intent and with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

64.     Plaintiffs bring this claim as successors in interest to DECEDENT and seek survival damages under this claim.  Plaintiffs seek damages, including for DECEDENT'S pain and suffering, loss of earning capacity, and loss of enjoyment of life.  Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C §1988 on this claim.

## SECOND CLAIM FOR RELIEF

**Fourteenth Amendment – Substantive Due Process, Interference with Familial Relations (42 U.S.C. § 1983)**

**(Against Defendants ARTHURTON, GREER, DUNBAR, SAVAGE, TIEL, FLORES, HAYES, HELLER, and WILSON)**

65.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 64 of this Complaint with the same force and effect as if fully set forth herein.

66.     Plaintiffs have a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their son, DECEDENT.

67.     At all relevant times, Defendant Deputies ARTHURTON, GREER, SAVAGE,

DUNBAR, HELLER, and SUPERVISOR WILSON, and SBCSD Deputies acted under color of law. HAYES and FLORES were medical professionals working under direction of COUNTY.

68.     As alleged above, Defendants had actual knowledge of DECEDENT's suicidal ideations, and his disturbing behavior, as follows: Local law enforcement had familiarity with DECEDENT and DECEDENT'S mental health struggles, including that DECEDENT suffered from bipolar disorder. When SBCSD Deputies ARTHURTON and GREER arrested DECEDENT on or around March 20, 2018, DECEDENT told the arresting Deputies that he wanted to kill himself. Throughout DECEDENT'S incarceration period of seven (7) days, DECEDENT verbalized his need for medication to assist him with his mental illness to SAVAGE, DUNBAR, HELLER, TIEL, WVDC medical professionals FLORES and HAYES, MBJ Supervisor WILSON, and other employees of MBJ and WVDC. On March 26, 2018, DECEDENT was acting delusional, was crying and shaking, and expressed his desire to hurt himself. DECEDENT was in custody at both MBJ and WVDC on that date. On March 27, 2018, DECEDENT'S family member visited and observed DECEDENT'S behaviors and then informed HELLER, DUNBAR, SAVAGE, TIEL and other MBJ employees on March 27, 2018 that DECEDENT was suffering from delusional behavior, was acting erratic, had suicidal ideations, and required continuous monitoring.

69.     Despite Defendants having actual knowledge of DECEDENT's suicidal ideations even prior to DECEDENT's booking at MBJ, on information and belief, DECEDENT was not properly and adequately screened by a Registered Nurse during intake at MBJ to determine his fitness for incarceration. Moreover, DECEDENT was improperly housed at MBJ, including in that he was placed in an unmonitored cell. Named Deputies and Supervisor WILSON were deliberately indifferent to DECEDENT's serious medical and mental health needs and disregarded

DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to DECEDENT upon booking at MBJ, including failure to place DECEDENT in a monitored cell and, on information and belief, failure to ensure that DECEDENT was properly screened by a Registered Nurse during intake. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to DECEDENT'S constitutional rights and serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial. These actions and omissions on the part of Defendants SAVAGE, DUNBAR, TIEL, HELLER and WILSON were so egregious, so outrageous, that they may be fairly said to shock the contemporary conscience. Defendants' aforementioned conduct intended to injure DECEDENT and served no legitimate or justifiable law enforcement objective.

70.     Defendants SBCSD DEPUTIES ARTHURTON and GREER were also deliberately indifferent to DECEDENT's serious medical and mental health needs and disregarded DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention and monitoring was provided to DECEDENT upon booking at MBJ. This is true particularly given that DECEDENT told the Defendant Deputies during his arrest that he wanted to kill himself, and local law enforcement was familiar with DECEDENT'S mental health struggles. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to DECEDENT'S constitutional rights and serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial. These actions and omissions on the part of Defendants SBCSD ARTHURTON, GREER, SAVAGE, DUNBAR, TIEL, HELLER, and WILSON were so egregious, so outrageous, that they may be fairly said to shock the contemporary conscience. Defendants' aforementioned conduct intended to injure DECEDENT and served no legitimate or justifiable law enforcement objective.

71.     Despite Defendants HAYES and FLORES also having actual knowledge of DECEDENT's suicidal ideations, desire to harm himself, and erratic behavior, HAYES and FLORES and SAVAGE, DUNBAR, TIEL, HELLER, and WILSON denied DECEDENT prompt and adequate medical attention or monitoring when they improperly and prematurely released DECEDENT from suicide watch even though he remained suicidal. DECEDENT was placed on suicide watch on March 21, 2018 and was prematurely and improperly released after only one day, on March 22, 2018, despite DECEDENT continuing to exhibit signs of suicidal behaviors. This demonstrates deliberate indifference and disregard for DECEDENT's serious medical and mental health needs and also shocks the conscience. Defendants were deliberately indifferent to DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to DECEDENT during his detention at WVDC between March 21, 2018 and March 26, 2018. On March 26, 2018, DECEDENT was acting delusional, was crying and shaking, and expressed his desire to hurt himself. Nonetheless, named Defendant Deputies transported DECEDENT back to MBJ rather than placing him back on suicide watch or providing him with medical attention to address his severe mental health emergency. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT'S constitutional rights and medical need as alleged above was substantial. These actions and omissions by Defendants ARTHURTON, GREER, DUNBAR, SAVAGE, TIEL, FLORES, HAYES, HELLER, and WILSON were so egregious, so outrageous, that they may be fairly said to shock the contemporary conscience. Defendants' aforementioned conduct intended to injure DECEDENT and served no legitimate or justifiable law enforcement objective.

72.     When DECEDENT returned to MBJ on March 26, 2018, DECEDENT was acting delusional, was crying and shaking, and expressed his desire to hurt himself.

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Despite named Defendant Deputies having actual knowledge of DECEDENT's suicidal ideations from the time of his arrest on March 20, 2018 up until the time of DECEDENT's death, all named Defendant Deputies and other MBJ employees failed to ensure that prompt and adequate medical attention and monitoring was provided to DECEDENT. HELLER, SAVAGE, DUNBAR, TIEL and WILSON were thus deliberately indifferent to DECEDENT's serious medical and mental health emergency and disregarded DECEDENT's serious medical and mental health needs. Despite their observations of DECEDENT's behavior and desire to hurt himself on March 26, 2018, HELLER and named Defendant Deputies failed to place DECEDENT on suicide watch at MBJ or transport him back to WVDC to be placed on suicide watch when he returned from WVDC, and failed to continuously monitor DECEDENT at MBJ or place him in a monitored cell, and failed to otherwise properly and promptly address his suicidal ideations. On March 27, 2018, HELLER and SBCSD SAVAGE, DUNBAR, TIEL, and WILSON received direct information from DECEDENT's family member that DECEDENT was suicidal and may harm himself. Despite this direct knowledge, HELLER, FLORES, HAYES, SAVAGE, DUNBAR, and TIEL still did not provide DECEDENT with adequate and prompt medical attention to address his serious medical needs. HELLER, FLORES, HAYES, SAVAGE, DUNBAR, and TIEL also took no actions to remove items from DECEDENT'S cell that he could use to harm himself, including his bedsheet that he ultimately used to hang himself. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to DECEDENT'S constitutional rights and serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial. These actions and omissions by Defendants HELLER, FLORES, HAYES, SAVAGE, DUNBAR, and TIEL were so egregious, so outrageous, that they may be fairly said to shock the contemporary conscience. Defendants' aforementioned conduct intended to injure

DECEDENT and served no legitimate or justifiable law enforcement objective.

73.     Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT, their son.

74.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity.  Also as a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

75.     The conduct of Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

76.     Plaintiffs bring this claim in their individual capacity and seek wrongful death damages under this claim.  Plaintiffs seek damages, including for DECEDENT'S pain and suffering, loss of earning capacity, and loss of enjoyment of life.  Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C §1988.

## THIRD CLAIM FOR RELIEF

### Professional Negligence--Medical Malpractice (wrongful death)

### California Government Code 845.6

### (Against COUNTY, HAYES, and FLORES)

77.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 90 of this Complaint with the same force and effect as if fully set forth herein.

78.     Defendants were aware of DECEDENT'S medical emergency, as follows:

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Local law enforcement had familiarity with DECEDENT and DECEDENT'S mental health struggles, including that DECEDENT suffered from bipolar disorder. When SBCSD Deputies ARTHURTON and GREER arrested DECEDENT on or around March 20, 2018, DECEDENT told the arresting Deputies that he wanted to kill himself.

79.     On March 21, 2018 the DECEDENT was taken from the Level 1 Morongo Jail to West Valley Detention Center and put on suicide watch, based upon his statement, history, and demeanor upon arrival, DECEDENT was put on suicide watch to save his life and protect him.

80.     WVDC is a Level 2 facility and has medical professionals on site.

81.     The DECEDENT had repeatedly stated he was going to kill himself and he had a history of suicidal ideation. DECEDENT also had a need for prescription psychotropic drugs. The evaluation and observation "suicide watch" was essential to the preservation of DECEDENT's life.

82.     Medical professionals HAYES and FLORES (medical professionals) authorized DECEDENT to be removed from suicide watch without monitoring and returned to a Level 1 jail within hours. This was below the standard of any medical professional, who had a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise. COUNTY medical providers had a duty to DECEDENT to provide approximate and established standard of medical care. DECEDENT was a patient to which a duty is owed.

83.     Defendant HAYES and FLORES breached their duty and failed to exercise the proper degree of knowledge, skill, and competence in examining, diagnosing, treating, and caring for DECEDENT, including but not limited to the following: (1) the failure to conduct a proper medical assessment of DECEDENT; (2) the failure to summon immediate emergency medical assistance for DECEDENT, both before and after he was found unresponsive; (3) the failure to keep DECEDENT on suicide

watch when he was known to be suicidal and have a propensity for self-harm; (4) the failure to place DECEDENT back on suicide watch when he was known to be suicidal and have a propensity for self-harm; (5) the failure to adequately monitor and supervise DECEDENT; (6) the failure to remove items from DECEDENT'S cell with which DECEDENT could harm himself, such as bedsheets, when DECEDENT was known to be suicidal and have a propensity for self-harm; (7) the failure to recognize and identify indications of suicidal tendencies. All this despite Defendants' knowledge of DECEDENT'S serious medical emergency.

84.    Plaintiffs bring this claim against the HAYES and FLORES on a theory their actions were actual and proximate of DECEDENT's foreseeable death. DECEDENT committed suicide four days later.

85.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also as a direct and proximate cause of the acts of Defendants, Plaintiffs have suffered emotional distress and mental anguish.  Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

86.    The conduct of the individual defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT and Plaintiffs, entitling Plaintiffs to an award of exemplary and punitive damages.

87.    Plaintiffs bring claim as successors in interest to DECEDENT and in their individual capacity and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of their DECEDENT's love, companionship, guidance, advice, and support.  Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C. §1988 on this claim.

**FOURTH CLAIM FOR RELIEF**

**Failure to Summon Medical Care (CAL. GOV'T. CODE §845.6)**

**(Against All Defendants)**

88.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 87 of this Complaint with the same force and effect as if fully set forth herein.

89.     Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

90.     Defendants were aware of DECEDENT'S medical emergency, as follows: Local law enforcement had familiarity with DECEDENT and DECEDENT'S mental health struggles, including that DECEDENT suffered from bipolar disorder. When ARTHURTON and GREER arrested DECEDENT on or around March 20, 2018, DECEDENT told the Deputies that he wanted to kill himself. Throughout DECEDENT'S incarceration period of seven (7) days, DECEDENT verbalized his need for medication to assist him with his mental illness to HELLER, Deputies DUNBAR, SAVAGE, TIEL and Supervisor WILSON, and other employees of WVDC and medical professionals HAYES and FLORES. On March 26, 2018, DECEDENT was acting delusional, was crying and shaking, and expressed his desire to hurt himself. DECEDENT was in custody at both WVDC on that date. On March 27, 2018, DECEDENT'S family member visited and observed DECEDENT'S behaviors and then informed HELLER, SAVAGE, DUNBAR, and TIEL, MBJ SUPERVISOR WILSON, and other MBJ employees on March 27, 2018 that DECEDENT was suffering from delusional behavior, was acting erratic, had suicidal ideations, and required continuous monitoring.

91.     In other words, as alleged above, DECEDENT'S medical emergency was obvious. Defendants are not entitled to immunity where the inmate is in obvious need of medical care.

92.     Despite Defendants' actual knowledge that DECEDENT was in need of immediate medical and mental care as alleged above, Defendants failed to (1) conduct a proper medical assessment of DECEDENT; (2) summon immediate emergency medical assistance for DECEDENT, both before and after he was found unresponsive; (3) keep DECEDENT on suicide watch when he was known to be suicidal and have a propensity for self-harm; (4) place DECEDENT back on suicide watch when he was known to be suicidal and have a propensity for self-harm; (5) adequately monitor and supervise DECEDENT; (6) recognize and identify indications of suicidal tendencies.

93.     Plaintiffs bring this claim against the COUNTY on a theory of vicarious liability and also bring this claim against all Defendants. The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to the following specific statute: Section 815.2(a) of the California Government Code provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California Government Code Section 820(a) states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, immunity is not afforded to defendants if an officer used excessive and unreasonable force. *Garcia v. City of Merced*, 637 F. Supp. 2d 731 (E.D. Cal. 2008). Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Here, Defendants COUNTY, MBJ SUPERVISOR WILSON, MBJ SAVAGE, DUNBAR, TIEL and HELLER, WVDC HAYES and FLORES are each liable for DECEDENT'S injuries and death, as well as for Plaintiffs' loss and damages. COUNTY is liable for the conduct of MBJ DEPUTIES and WVDC medical personnel on a theory of *respondeat superior*.

94.   The conduct of the individual Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT and Plaintiffs, entitling Plaintiffs to an award of exemplary and punitive damages as to the individual Defendants.

95.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity.  Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiffs have suffered emotional distress and mental anguish.  Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

96.   Plaintiffs bring claim as successors in interest to DECEDENT and in their individual capacity and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of their DECEDENT's love, companionship, guidance, advice, and support.  Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C. §1988 on this claim.

**FIFTH CLAIM FOR RELIEF**

**BANE ACT (CAL GOV'T CODE §52.1)**

**(Against All Defendants)**

97.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 96 of this Complaint with the same force and effect as if fully set forth herein.

98.     California Civil Code Section 52.1 ("the Bane Act"), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights and prohibits a person from intentionally interfering with another person's constitutional rights.  An intent to violate a person's constitutional rights can be shown by a reckless disregard for that person's constitutional rights.  Here, defendants acted with reckless disregard for DECEDENT's constitutional rights as set forth above.

99.     Based upon information and belief, nurses, doctors, deputies, correctional deputies, threaten or coerce inmates from being placed on suicide watch. DECEDENT was suicidal and was prematurely released from suicide watch.

100.   Defendants in this matter violated the Bane Act by failing to protect DECEDENT from harming himself and by failing to provide him with the necessary medical and mental health treatment by using coercion.

101.   When Defendants engaged in their misconduct and inactions as alleged above—including failing to provide medical care and mental health treatment to DECEDENT, who was exhibiting suicidal ideations and a propensity for self-harm, even when Defendants had direct information that DECEDENT desired to harm or kill himself—Defendants DUNBAR, SAVAGE, TIEL, and HELLER and WVDC employees HAYES and FLORES interfered with DECEDENT'S constitutional rights, including his constitutional right to be free from excessive force and his constitutional right to timely and adequate medical attention, by coercion.

102.   Defendants successfully interfered with the above civil rights of DECEDENT and Plaintiffs by tasing DECEDENT. It is based on belief Defendant Deputies DUNBAR, SAVAGE, and TIEL attempted to coerce the DECENDENT on March 20 or 21, 2018 to say he was not suicidal to free up their obligation and time.

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

103.   When Defendants engaged in their misconduct and inactions as alleged above—including failing to provide medical care and mental health treatment to DECEDENT, who was exhibiting suicidal ideations and a propensity for self-harm, even when Defendants had direct information that DECEDENT desired to harm or kill himself—Defendants SAVAGE, DUNBAR, TIEL and HELLER and WVDC employees HAYES and FLORES intended to interfere with DECEDENT'S constitutional rights, including his constitutional right to be free from excessive force and his constitutional right to timely and adequate medical attention, by coercing or suggesting answers.

104.   When Defendants engaged in their misconduct and inactions as alleged above—including failing to provide medical care and mental health treatment to DECEDENT, who was exhibiting suicidal ideations and a propensity for self-harm, even when Defendants had direct information that DECEDENT desired to harm or kill himself—all named Defendants acted with reckless disregard for DECEDENT'S constitutional rights, including his constitutional right to be free from excessive force and his constitutional right to timely and adequate medical attention.

105.   On information and belief, Defendants intentionally committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

106.   On information and belief, DECEDENT reasonably believed and understood that the acts committed by Defendants were intended to discourage him from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

107.   The conduct of Defendants as alleged above was a substantial factor in causing Plaintiffs' and DECEDENT's harms, losses, injuries, and damages.

108.   The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

109.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive damages[3] as to the individual Defendants.

_____

[3] In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court concluded that punitive damage awards "did not require a showing of actual malicious intent; rather, [federal and state courts] permitted punitive awards on variously stated standards of negligence, recklessness, or other culpable conduct short of actual malicious intent." 461 U.S. at 45; *see also Wright v. Jones*, 907 F.2d 848, 852 (8th Cir. 1990) (holding that a finding of "willful or malicious conduct" is not a necessary prerequisite to punitive liability). In *Dang v. Cross*, 422 F.3d 800, 806–07 (9th Cir. 2005), the Ninth Circuit he *Wade* Court noted cases applying various formulations of the standards for punitive damages awards that existed at the time Congress enacted § 1983, including "malicious or wanton misconduct or culpable neglect," *Welch v. Durand*, 36 Conn. 182, 185 (1869), conduct done "wantonly, or oppressively," *Cowen v. Winters*, 96 F. 929, 935 (6th Cir. 1899) (citations omitted); *Berry v. Fletcher*, 3 F.Cas. 286, 288 (C.C. Mo. 1870); *Fotheringham v. Adams Exp. Co.*, 36 F. 252, 253 (E.D. Mo. 1888), "gross negligence," *Frink & Co. v. Coe*, 4 Greene 555, 1854 WL 228, at *4 (Iowa 1854); *Maysville & L.R. Co. v. Herrick*, 76 Ky. 122, 127 (1877), "reckless negligence," *Florida Ry. & Nav. Co. v. Webster*, 25 Fla. 394, 5 So. 714, 719 (1889), and "reckless disregard of the rights of others," *Jacobus v. Congregation of Children of Israel*, 107 Ga. 518, 33 S.E. 853, 855 (1899). Importantly, the *Wade* Court noted that in modern tort law, courts continue to apply the same standards for punitive damages awards. *Dang v. Cross*, 422 F.3d at 806–07 (citing *Id.* at 46). The Ninth Circuit in *Dang* also noted that there is "no reason why a person whose federally guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort cause of action." 422 F.3d at 806-07 (quoting *Smith v. Wade, supra*, at 48–49).

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

110.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity.  Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiffs have suffered emotional distress and mental anguish.  Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

111.   Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacity and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of their DECEDENT's love, companionship, guidance, advice, and support.  Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees on this claim. Under the provisions of Cal. Civ. Code §52, Defendants are also liable for reasonable attorney's fees and a civil penalty of $25,000.00.

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants San Bernardino County, RYAN ARTHURTON, WAYNE GREER, BILL SAVAGE, RONALD DUNBAR, BROOKE FLORES, MICHELLE HAYES, CRAIG HELLER, JACOB TIEL, STEVE WILSON, and DOE 10, as follows: (a) For compensatory damages and whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law; (b) For funeral and burial expenses, and loss of financial support; (c) For pre-death pain and suffering, and loss of enjoyment of life according to proof at trial; (d) For punitive damages against the individual Defendants in an amount to be proven at trial; (e) For statutory damages; (f) For interest; (g) For reasonable attorney's fees, including litigation expenses; (h) For costs of suit; and (i) For such further other relief as the Court may deem just, proper, and appropriate.

LAW OFFICE OF SHARON J. BRUNNER
LAW OFFICE OF JAMES S. TERRELL

Dated: August 4, 2020                    By:_____/s/*Sharon J. Brunner*
                                                        Sharon J. Brunner
                                                        James S. Terrell
                                                        Attorney for Plaintiffs


THE LAW OFFICES OF DALE K. GALIPO

Dated: August 4, 2020                    By:_____/s/*Dale K. Galipo*
                                                        Dale K. Galipo
                                                        Attorney for Plaintiffs

32
THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**JURY DEMAND**

      Plaintiffs hereby demand a trial by jury on all issues.

Respectfully Submitted,


                                           LAW OFFICE OF SHARON J. BRUNNER
                                           LAW OFFICE OF JAMES S. TERRELL

Dated: August 4, 2020                      By:       */s/Sharon J. Brunner*
                                               Sharon J. Brunner
                                             James S. Terrell
                                         Attorney for Plaintiffs


                                  THE LAW OFFICES OF DALE K. GALIPO


Dated: August 4, 2020                      By:       */s/Dale K. Galipo*
                                               Dale K. Galipo
                                             Attorney for Plaintiffs

THIRD AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL